CAPITOL INDEMNITY CORP., APPELLANT, v. THE STATE OF NEVADA, DEPARTMENT OF BUSINESS AND INDUSTRY, CONSUMER AFFAIRS DIVISION, RESPONDENT.

No. 41880

July 20, 2006                    138 P.3d 516

*Faux & Associates, P.C.*, and *Kurt C. Faux* and *William B. Parsons IV*, Las Vegas, for Appellant.

*George Chanos*, Attorney General, and *Kathleen E. Delaney*, Deputy Attorney General, Carson City, for Respondent.

Before MAUPIN, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this opinion, we determine whether a surety has an equitable right to intervene at an administrative bond forfeiture hearing on behalf of an absent principal. Because the hearing officer may dispose of the controversy without receiving evidence contesting the principal's liability, we adopt the doctrine of legal subrogation and conclude that a surety is equitably entitled to intervene on behalf of the absent principal at a bond forfeiture hearing. This right is limited, however, to contesting the amount of legally guaranteed loss, to denying the principal's liability, and to asserting any defenses personal to the principal.

### FACTS AND PROCEDURAL HISTORY

NRS Chapter 598 sets forth the rules and regulations that a credit service organization must adhere to in order to advertise its services or conduct business in Nevada. One such regulation is the requirement that a credit service organization register with the Consumer Affairs Division of the Department of Business and Industry (the Division).[1] As part of the registration process, the credit service organization must deposit a security bond, executed by a corporate surety, with the Division.[2] The security bond is to "be held in trust for consumers injured by the bankruptcy of the [credit service organization] or the [credit service organization's] breach of any agreement entered into in [its] capacity as a [credit service organization]."[3]

Once the credit service organization complies with the registration process, it may begin advertising its services and conducting business in Nevada.[4] If a consumer believes that he or she has been

---

[1]NRS 598.721(1).
[2]NRS 598.726(1).
[3]NRS 598.731(1).
[4]*Id.*

injured by a bankruptcy or breach of an agreement, three investigatory options are available: (1) the consumer "may bring and maintain an action in any court of competent jurisdiction to recover against the security";[5] (2) "[t]he Division may bring an action for interpleader against all claimants upon the security";[6] or (3) "[t]he Division may, in lieu of bringing an action for interpleader . . . , conduct a hearing to determine the distribution of the security to claimants."[7]

In 1995, National Consumer Credit, Inc., began business operations in Nevada as a credit service organization. In February 1998, Capitol Indemnity Corporation (Capitol) issued the required security bond to the Division on behalf of National.[8] While this bond was in effect, the Division received two separate complaints from National consumers. The Division audited the two complaints and found that restitution totaling $20,447.05 was warranted. Thereafter, the Division notified National of the administrative hearing date at which it could dispute the Division's intended action to seek forfeiture of the security bond. Additionally, the Division notified Capitol that it was seeking forfeiture of the security bond and that further correspondence would follow detailing the outcome of the hearing.

Before the hearing on National's consumer complaints commenced, Capitol filed a motion to intervene. After reviewing the applicable statutes and administrative code sections, the administrative hearing officer concluded that Capitol was not a proper party to the forfeiture hearing and denied intervention. For reasons not known at the time of the hearing, neither the owner of National nor any National representative appeared at the hearing to represent National's interests. Thereafter, the Division presented evidence in support of its findings that the consumers should be compensated because National violated NRS 598.746(1),[9] (4)[10] and (6).[11] After

---

[5]NRS 598.731(2).

[6]NRS 598.731(3).

[7]NRS 598.731(4).

[8]National deposited two bonds with the Division. The first was deposited in 1995 during the initial registration. The second, superseding bond was issued in February 1998. This 1998 bond for $100,000 is at issue in this appeal and covers the period from February 3, 1998, to March 4, 1999.

[9]NRS 598.746(1) prohibits "[c]harg[ing] or receiv[ing] any money or other valuable consideration before full and complete performance of the services the organization has agreed to perform for or on behalf of the buyer."

[10]NRS 598.746(4) prohibits "[m]ak[ing] or us[ing] any untrue or misleading representations in the offer or sale of the services of an organization."

[11]NRS 598.746(6) prohibits "[r]emov[ing], or assist[ing] or advis[ing] the buyer to remove from the buyer's credit record, history or rating, information that is adverse to the buyer's ability to obtain credit if the information is accurate and not obsolete."

hearing evidence from the Division only, the hearing officer determined that the Division provided persuasive and compelling evidence that both consumers should be compensated for their business dealings with National. The hearing officer awarded $15,653.76 to one consumer and $4,793.29 to the other through restitution from the security bond. The hearing officer also awarded the Division $4,593.18 in costs. The remainder of the balance on the security bond was ordered released to Capitol after each party's claim was satisfied.

Capitol filed a petition for judicial review with the district court, challenging the hearing officer's decision to exclude Capitol from the forfeiture hearing. In response, the Division filed a motion to dismiss Capitol's petition. The Division argued that Capitol had no right to petition for judicial review because it was neither a proper party to the administrative proceeding nor aggrieved by the hearing officer's decision. The district court granted the Division's motion, ruling that Capitol was not a proper party to the forfeiture hearing. Capitol now appeals.

## DISCUSSION

In this appeal, we address an issue of first impression; whether a surety has an equitable right to intervene at an administrative bond forfeiture hearing when the principal fails to appear.[12] We now adopt the doctrine of legal subrogation and conclude that a surety is equitably entitled to intervene on behalf of the absent principal at an administrative bond forfeiture hearing. This right is limited, however, to contesting the amount of legally guaranteed loss, to denying the principal's liability, and to asserting any defenses personal to the principal.

### The Wyoming Supreme Court's approach to legal subrogation

In *Allied Fidelity Insurance v. Environmental Quality Council*, the Wyoming Supreme Court determined that a surety has an equitable right to request an administrative bond forfeiture hearing when the principal fails to request one.[13] *Allied Fidelity* involved an insolvent operator that had ceased business operations and did not fulfill its statutory duty to reclaim mined land.[14] The defunct operator did not exercise its right to request a hearing in which the merits of the bond forfeiture would have been considered.[15] In re-

---

[12]The regulatory scheme encompassed in NRS Chapter 598 is silent on this issue.

[13]753 P.2d 1038 (Wyo. 1988).

[14]*Id.* at 1038.

[15]*Id.*

sponse, the surety requested a hearing to contest the merits.[16] The administrative adjudicatory panel denied the surety's request for a hearing and ordered the bond forfeited.[17]

As in Nevada, the Wyoming statutory scheme does not expressly grant, or deny, a surety the right to intervene at an administrative hearing.[18] After noting the Wyoming Legislature's silence on the issue, the Wyoming Supreme Court adopted the doctrine of legal subrogation, but with specific limitations.[19] The court stated that legal subrogation granted the surety a right to replace the absent principal and request a hearing, but only "to contest the amount of legally guaranteed loss or to deny liability"[20] before the surety has made payment on the security bond.[21] The court's rationale was as follows:

> "The right of subrogation may arise and sometimes must arise from contract. This is conventional subrogation. The right is sometimes given in the absence of contract, is then a creation of the court of equity and is given when otherwise there would be a manifest failure of justice. This is legal subrogation. . . . This principle, adopted from the Roman law and at first sparingly exercised, has come to be one of the great principles of equity of our jurisprudence and courts incline to extend it rather than restrict it."[22]

### Legal subrogation now applies in Nevada

We now adopt the Wyoming Supreme Court's approach to legal subrogation and hold that a surety has an equitable right to intervene at an administrative bond forfeiture hearing, where the principal is absent, to contest the amount of legally guaranteed loss, to deny the principal's liability, or to assert any defenses personal to the principal.[23] Further, where the surety has an opportunity to ap-

---

[16]*Id.* at 1038-39.

[17]*Id.* at 1039.

[18]*Id.*

[19]*Id.* at 1041.

[20]*Id.*

[21]*Id.*; *see also Allen v. See*, 196 F.2d 608, 610 (10th Cir. 1952) (stating that "[t]he right to subrogation does not depend upon whether the surety pays the principal creditor before or after an adjudication in bankruptcy").

[22]*Allied Fidelity*, 753 P.2d at 1041 (quoting *Wyoming Building & Loan Ass'n v. Mills Const.*, 269 P. 45, 48 (Wyo. 1928)).

[23]Like the Wyoming statutory scheme, NRS Chapter 598 does not expressly grant or deny a surety the right to intervene at the bond forfeiture hearing on behalf of the principal. Had the Legislature intended to preclude a surety from intervening on behalf of the principal at the bond forfeiture hearing, it could

pear on behalf of the absent principal and fails to do so, res judicata will apply to the administrative determination of liability.[24]

In this case, National did not appear at the bond forfeiture hearing to defend against forfeiture of the bond. Capitol filed a motion to intervene, and the hearing officer denied the motion. Thereafter, the Division presented evidence in support of its finding that National violated NRS 598.746(1), (4) and (6) and as a result, the claimants should be compensated. Because National did not appear and because Capitol was denied intervention, no evidence was presented on National's behalf. We acknowledge that NAC 598.162 grants the hearing officer the authority to dispose of the controversy even if a party fails to appear and no evidence is presented on that party's behalf. However, when a surety is willing to intervene at the forfeiture hearing and capable of presenting evidence on behalf of the principal, equity demands that the surety be guaranteed the opportunity to do so.

Accordingly, Capitol properly sought to intervene and was entitled to be admitted as a party.[25] Capitol, by way of its contractual obligation with National, was aggrieved by the hearing officer's decision to allow forfeiture of the security bond because that decision effectively triggered Capitol's obligation to pay the bond.[26]

## CONCLUSION

Because Capitol was denied the opportunity to intervene at the administrative bond forfeiture hearing, we reverse the district court's order dismissing Capitol's petition for judicial review. Further, we remand this matter to the district court. On remand, the district court shall grant Capitol's petition for judicial review and

---

have expressly stated such intent. *See Mineral County v. State, Bd. of Equalization*, 121 Nev. 533, 536 n.5, 119 P.3d 706, 708 n.5 (2005) (stating that "had the Legislature intended to preclude county petitions of State Board decisions, it could have explicitly stated that intent").

[24]*See Britton v. City of North Las Vegas*, 106 Nev. 690, 692, 799 P.2d 568, 569 (1990) ("The weight of authority holds that administrative res judicata is a matter of sound policy. We therefore adopt a general rule of administrative res judicata.").

[25]*See* NRS 233B.130(1) (stating that an aggrieved party of record to an administrative proceeding is entitled to petition for judicial review); NRS 233B.035 (defining "party" as "each person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in any contested case").

[26]*See* NRS 233B.035; *Edwards v. State, Dep't Human Resources*, 96 Nev. 689, 692, 615 P.2d 951, 952 (1980) (stating that the respondent was a party within the meaning of NRS 233B.035 and an aggrieved party within the meaning of NRS 233B.130(1) because it was affected by the administrative commission's decision forcing it to pay increased salaries and back pay).

remand the matter to the hearing officer with the following instructions: the hearing officer shall grant Capitol's motion to intervene and shall conduct a new bond forfeiture hearing so that Capitol may present evidence on behalf of National in accordance with this opinion.[27]

MAUPIN and GIBBONS, JJ., concur.

---

[27]We have considered the remaining issues on appeal and given the disposition of this case, we conclude that a discussion of Capitol's remaining issues is unnecessary.